UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DION PATRICK DAWSON,

           Plaintiff,           Case No. 1:06-cv-914

v.                                             Honorable Robert Holmes Bell

NANETTE NORWOOD et al.,

           Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Fourteenth Amendment due process and Eighth Amendment claims. The Court will order service of the complaint with regard to Plaintiff's Fourteenth Amendment equal protection and First Amendment retaliation claims.

**Discussion**

  I.  <u>Factual allegations</u>

  Plaintiff is incarcerated at the St. Louis Correctional Facility, but the events giving rise to his action occurred while he was incarcerated at the Gus Harrison Correctional Facility (ACF) and the Ionia Maximum Correctional Facility (ICF). In his *pro se* complaint, he sues the following ICF employees: Deputy Warden Nannette Woods, Resident Unit Manager Hearld Gilkey, Case Manager Steven Dykehouse and Assistant Deputy Warden Erica Huss. Defendants are members of the Security Classifications Committee (SCC) at ICF.

  Plaintiff's complaint concerns his placement in administrative segregation at ICF. Plaintiff claims that on January 5, 2005, while he was incarcerated at ACF, he was in one of the activity rooms when a prisoner was stabbed. After the stabbing victim was removed from the room, Plaintiff became involved in a fist fight with other prisoners in the activity room. After the fight, a corrections officer entered the activity room and searched the prisoners. The officer found a laceration on Plaintiff's hand. Plaintiff received a Notice of Intent (NOI) to classify him to segregation pending the outcome of the investigation by the Michigan State Police concerning the stabbing incident. On January 6, 2005, Plaintiff was transferred from ACF, a security level 4 facility to ICF, a security level 5 facility. According to Plaintiff, the state police investigators concluded that he was not involved in the stabbing, but cut his hand during a fist fight with other prisoners. As a result, the NOI was dismissed, but Plaintiff received a major misconduct charge for fighting Prisoner Humphries. Two other prisoners, Prisoners Lancater and White, also were charged with assault and battery of Prisoner Humphries.

  Plaintiff was found guilty of fighting on January 21, 2005, and the SCC reclassified him to administrative segregation on January 25. Plaintiff received monthly review of his placement

- 2 -

by the SCC. Despite his misconduct conviction, Plaintiff maintains that he should have been transferred back to a level 4 facility because he was found not to be involved in the stabbing incident and the NOI had been dismissed. He claims that the SCC improperly continued his placement in segregation because of his alleged involvement in the stabbing at ARF. On April 28, 2005, Plaintiff filed a grievance against the SCC complaining that the manner in which they conducted the 30-day periodic reviews violated his due process rights because the SCC routinely continued his segregation without giving him a meaningful opportunity to be heard. Plaintiff claims that after he filed a grievance against Defendants Mackey and Gilkey on May 19, 2005, Defendant Gilkey "hurl[ed] retaliatory threats" at Plaintiff and threatened to move him to Housing Unit 2 if he did not sign off on the grievance. (Compl., ¶ 53.) Plaintiff claims that "Unit 2 was rumored to be very foully operated." (Compl., ¶ 53.)

On July 13, 2005, Defendants Norwood and Gilkey interviewed Plaintiff regarding his classification. At the meeting, Plaintiff continued to argue that his placement in segregation was predicated upon his involvement in a stabbing, when he had been cleared of any involvement. According to Plaintiff, Defendant Norwood threatened to punish him for speaking up for himself by holding him in segregation for three more months. Plaintiff filed a grievance against Norwood the same day. Plaintiff's grievance was rejected as duplicative of previous grievances and he was placed on modified access restriction. Plaintiff maintains that his grievances were not duplicative and contends that the SCC ordered that he be placed on modified access in retaliation for filing grievances against them.

Plaintiff alleges that on July 15, 2005, Defendant Gilkey informed him that Defendant Norwood had called ARF and confirmed that Plaintiff was not involved in the stabbing, and that Plaintiff was being released from segregation pending bed space in the general population at ICF.

Petitioner claims that bed space became available in the general population in August 2005, but he was not released from segregation. When Plaintiff raised the issue with Defendants, they told him that he had not been released from segregation. Plaintiff ultimately was released from administrative segregation to the general population on October 5, 2005. Plaintiff contends that Defendant Norwood made good on her July 13, 2005 threat that she would hold him for an additional three months for speaking up for himself. Plaintiff subsequently was transferred to a level IV facility on March 19, 2006.

According to Plaintiff, he received a much more severe punishment than Prisoners Lancaster, White and Humphries who were found guilty of assault and battery arising from the same incident. Plaintiff alleges that Humphries served fifteen days in segregation and then was released back to level IV general population. Both Lancaster and White served twenty days in segregation before being returned to the general population in a security level IV facility. Plaintiff further alleges that Prisoners White and Lancaster had other recent misconduct convictions for assault and battery. Plaintiff maintains that while he had no previous misconduct convictions for fighting, he spent approximately nine months in segregation and spent five additional months at security level V before being transferred back to a security level IV facility.

Plaintiff asserts violations of his substantive and procedural due process rights and Eighth Amendment rights arising from his continued confinement in segregation after the NOI was dismissed. He further claims that Defendants retaliated against him for filing grievances in violation of the First Amendment. In addition, Plaintiff claims that Defendants violated his equal protection rights by punishing him more harshly than similarly situated prisoners. Plaintiff seeks declaratory relief and monetary damages.

II.   Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.   **Due Process**

Plaintiff claims that Defendants violated his due process rights when they kept him confined in administrative segregation for approximately ten months after he was cleared of involvement in the stabbing incident and the Notice of Intent was dismissed. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). The Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction

of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding); *but see Austin v. Wilkinson*, 545 U.S. 209 (2005) holding that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline" because "[conditions] at [the prison] are more restrictive than any other form of incarceration in Ohio"). Plaintiff has failed to make any allegations that his nine-month placement in segregation was "atypical and significant."

Furthermore, any denial of meaningful periodic reviews of his placement in administrative segregation did not violate Petitioner's due process rights. The State did not create independent substantive right merely by establishing procedures for periodic reviews, and thus state prison officials' denial of periodic reviews for inmate placed in administrative segregation did not violate his due process rights. *See Olim v. Wakinekona,* 461 U.S. 238, 250-51 (1983); *Underwood v. Luoma*, 107 F. App'x 543, (6th Cir. 2004). Consequently, the Court concludes that no liberty interest was implicated by Plaintiff's placement or continued confinement in administrative segregation for a period of nine months. Plaintiff likewise fails to state a claim to the extent he claims that his transfer to a security level V facility violated his due process rights. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim*, 461 U.S. at 245. A change in security classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin*, 515 U.S. at 486. Plaintiff, therefore, fails to state a due process claim.

B.     **Eighth Amendment**

Plaintiff also claims that his placement in administrative segregation violated his Eighth Amendment right against cruel and unusual punishment. The Eighth Amendment prohibits

punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although Plaintiff was denied certain privileges as a result of his placement in administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Merchant v. Hawk-Sawyer*, No. 01-6244, 2002 WL 927026, at *2 (6th Cir. May 7, 2002); *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999).

Plaintiff's Eighth Amendment claim for mental anguish also is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999); *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999); *Zehner v. Trigg*,

133 F.3d 459, 461 (7th Cir. 1997); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Jarriet v. Wilson*, No. 03-4196, 2005 WL 3839415, at *4 (6th Cir. July 7, 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff does not allege that he has suffered any physical injury as the result of his placement in administrative segregation. Accordingly, Plaintiff fails to state an Eighth Amendment claim.

### C.     Equal Protection and Retaliation

Upon initial review, the Court concludes that Plaintiff's equal protection and First Amendment retaliation claims are not subject to dismissal under 28 U.S.C. § 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines the Plaintiff's Fourteenth Amendment due process and Eighth Amendment claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint with regard to Plaintiff's Fourteenth Amendment equal protection and First Amendment retaliation claims.

An Order consistent with this Opinion will be entered.


Dated:    February 14, 2007              /s/ Robert Holmes Bell
                                         ROBERT HOLMES BELL
                                         CHIEF UNITED STATES DISTRICT JUDGE