UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DION PATRICK DAWSON,

        Plaintiff,                            Case No. 1:06-cv-914

v.                                                 Honorable Robert Holmes Bell

NANNETTE NORWOOD et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiffs sues four employees of the Ionia Maximum Correctional Facility (ICF) arising from his placement in administrative segregation at ICF for a nine-month period in 2005. On February 15, 2007, the Court issued an opinion and order, dismissing Plaintiff's Fourteenth Amendment due process and Eighth Amendment claims for failure to state a claim. The Court ordered service of the complaint with regard to Plaintiff's Fourteenth Amendment equal protection and First Amendment retaliation claims.

        On March 30, 2007, Defendants Norwood, Gilkey and Huss filed a motion for summary judgment and supporting brief (dockets #25-26) on the ground that Plaintiff failed to exhaust his administrative remedies with regard to the remaining claims. Five days later, Defendant Dykehouse moved for the Court to adopt by reference the motion and brief filed on March 30, 2007 (docket #33). On April 10, 2007, the Court granted Plaintiff's motion for extension of time to file a response to Defendants' motion for summary judgment. Plaintiff subsequently filed his response

(docket #41) and a cross-motion for summary judgment (docket #42). Defendants filed a reply (docket #44) on June 27, 2007, in which Defendants Gilkey, Dykehouse and Norwood withdrew their motion for summary judgment. Defendant Huss stands by the motion. For the reasons set forth below, I recommend that Defendant Huss' motion for summary judgment be granted. I further recommend that Plaintiff's cross-motion for summary judgment be dismissed because it is premature. Plaintiff's retaliation and equal protection claims should proceed against Defendants Norwood, Gilkey and Dykhouse.

### **Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations . . . . [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (citations omitted).

**Facts**

Plaintiff is incarcerated at the St. Louis Correctional Facility, but the events giving rise to his action occurred while he was incarcerated at the Gus Harrison Correctional Facility (ACF) and ICF. In his *pro se* complaint, he sues the following ICF employees: Deputy Warden Nannette Woods, Resident Unit Manager Hearld Gilkey, Case Manager Steven Dykehouse and Assistant Deputy Warden Erica Huss. Defendants are members of the Security Classifications Committee (SCC) at ICF.

Plaintiff's complaint concerns his placement in administrative segregation at ICF. Plaintiff claims that on January 5, 2005, while he was incarcerated at ACF, he was in an activity room when a prisoner was stabbed. After the stabbing victim was removed from the room, Plaintiff became involved in a fist fight with other prisoners in the activity room. When the fight was over, a corrections officer entered the activity room and searched the prisoners. The officer found a laceration on Plaintiff's hand. Plaintiff received a Notice of Intent (NOI) to classify him to segregation pending the outcome of the investigation by the Michigan State Police concerning the stabbing incident. On January 6, 2005, Plaintiff was transferred from ACF, a security level 4 facility to ICF, a security level 5 facility. According to Plaintiff, the state police investigators concluded that he was not involved in the stabbing, but cut his hand during the fist fight with other prisoners. As a result, the NOI was dismissed, but Plaintiff received a major misconduct charge for fighting with Prisoner Humphries. Two other prisoners, Prisoners Lancaster and White, also were charged with assault and battery of Prisoner Humphries.

Plaintiff was found guilty of fighting on January 21, 2005, and the SCC reclassified him to administrative segregation on January 25. Plaintiff received monthly reviews of his

placement by the SCC. Despite his misconduct conviction, Plaintiff maintains that he should have been transferred back to a level 4 facility because he was found not to be involved in the stabbing incident and the NOI had been dismissed. He claims that the SCC improperly continued his placement in segregation because of his alleged involvement in the stabbing at ACF. On April 28, 2005, Plaintiff filed a grievance against the SCC complaining that the manner in which they conducted the 30-day periodic reviews violated his due process rights because the SCC routinely continued his segregation without giving him a meaningful opportunity to be heard. Plaintiff claims that after he filed a grievance against Defendants Mackey and Gilkey on May 19, 2005, Defendant Gilkey "hurl[ed] retaliatory threats" at Plaintiff and threatened to move him to Housing Unit 2 if he did not sign off on the grievance. Compl., ¶ 53. Plaintiff claims that "Unit 2 was rumored to be very foully operated." Compl., ¶ 53.

On July 13, 2005, Defendants Norwood and Gilkey interviewed Plaintiff regarding his classification. At the meeting, Plaintiff continued to argue that his placement in segregation was predicated upon his involvement in a stabbing, when he had been cleared of any involvement. According to Plaintiff, Defendant Norwood threatened to punish him for speaking up for himself by holding him in segregation for three more months. Plaintiff filed a grievance against Norwood the same day. Plaintiff's grievance was rejected as duplicative of previous grievances and he was placed on modified access restriction. Plaintiff maintains that his grievances were not duplicative and contends that the SCC ordered that he be placed on modified access in retaliation for filing grievances against them.

Plaintiff alleges that on July 15, 2005, Defendant Gilkey informed him that Defendant Norwood had called ACF and confirmed that Plaintiff was not involved in the stabbing, and that

Plaintiff would be released from segregation pending bed space in the general population at ICF. Plaintiff claims that bed space became available in the general population in August 2005, but he was not released from segregation. When Plaintiff raised the issue with Defendants, they told him that he had not been released from segregation. Plaintiff ultimately was released from administrative segregation to the general population on October 5, 2005. Plaintiff contends that Defendant Norwood made good on her July 13, 2005 threat that she would hold him for an additional three months for speaking up for himself. Plaintiff subsequently was transferred to a level IV facility on March 19, 2006.

According to Plaintiff, he received a much more severe punishment than Prisoners Lancaster, White and Humphries, who were found guilty of assault and battery arising from the same incident. Plaintiff alleges that Humphries served fifteen days in segregation and then was released back to level IV general population. Both Lancaster and White served twenty days in segregation before being returned to the general population in a security level IV facility. Plaintiff further alleges that Prisoners White and Lancaster had other recent misconduct convictions for assault and battery. Plaintiff maintains that while he had no previous misconduct convictions for fighting he spent approximately nine months in segregation and spent five additional months at security level V before being transferred back to a security level IV facility.

Plaintiff asserts violations of his substantive and procedural due process rights and Eighth Amendment rights arising from his continued confinement in segregation after the NOI was dismissed. He further claims that Defendants retaliated against him for filing grievances in violation of the First Amendment. In addition, Plaintiff claims that Defendants violated his equal protection rights by punishing him more harshly than similarly situated prisoners. Plaintiff seeks declaratory

relief and monetary damages.

On February 15, 2007, the Court issued an opinion and order on February 15, 2007, dismissing Plaintiff's Fourteenth Amendment due process and Eighth Amendment claims for failure to state a claim. The Court ordered service of the complaint with regard to Plaintiff's Fourteenth Amendment equal protection and First Amendment retaliation claims.

## Discussion

I. **Defendant Huss' Motion for Summary Judgment**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2007). "Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 127 S. Ct. at 922.

Michigan Department of Corrections Policy Directive 03.02.130 (eff. Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first

---

[1] The MDOC amended the Grievance Policy on March 5 and July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form must be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations must be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

With regard to content, the policy requires that the issues be presented briefly. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T. The policy further states, "Information provided shall be limited to the facts involving the issue being grieved (i.e. who, what, when where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* In *Jones*, the Supreme Court rejected the requirements imposed by the Sixth Circuit that, in order to properly exhaust, all defendants named in the complaint must have been named in the Step I grievance. 127 S. Ct. at 922-23. However, the *Jones* Court relied upon the version of the policy that took effect on November 1, 2000. In that version of the policy, there was no requirement that particular officials must be named in a Step I grievance. In this case, the version of the policy that became effective on December 19, 2003 governs the grievances filed by Plaintiff. As set forth above, the 2003 version of the policy requires a prisoner to provide the names of all those involved in the issue in the Step I grievance.

Defendant Huss acknowledges that Plaintiff filed grievances complaining that he should not be classified at a certain security level and contending that he should be released from administrative segregation, but contends that Plaintiff did not file or attempt to file any grievance alleging that she refused to release Plaintiff from segregation or treated him more harshly than other inmates because of his previous grievances. In response, Plaintiff claims that he did not have an "available" administrative remedy because he was placed on modified grievance access. Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." Policy Directive 03.02.130, ¶ II. The modified access period is ninety days and may be extended an additional thirty

days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the grievance coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ LL. "If a prisoner has been placed on modified access to the grievance procedure and attempts to file a grievance which is deemed to be non-meritorious, he has exhausted his 'available' administrative remedies as required by § 1997e(a)." *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

Plaintiff was placed on modified access from July 20, 2005, through October 18, 2005. *See* 7/19/05 Memorandum, Exhibit 2, docket #42. Plaintiff claims that while he was on modified access he made two requests to the grievance coordinator for a Step I grievance form. In his first request dated July 19, 2005, he argued at length that he should not have been placed on modified access for filing a grievance about his continued placement in segregation. With regard to Defendant Huss, Plaintiff complained that the grievance coordinator violated policy by permitted Huss to review his grievance when Huss was one of parties named in the grievance. *See* 7/19/05 Grievance Request, Exhibit 3, docket #42. Plaintiff never made any allegations in the request that Defendant Huss retaliated against him for filing grievances or punished him more harshly than similarly situated prisoners because he filed grievances complaining about his placement in segregation. Under the grievance policy, Plaintiff was required to provide the facts concerning the issues being grieved. *See* Policy Directive 03.02.130, ¶ T. Plaintiff did not allege facts supporting a retaliation or equal protection claim against Defendant Huss; therefore, his first grievance request was not sufficient to exhaust his administrative remedies.

Plaintiff wrote a second request on August 23, 2005, in which he alleged that the ICF administration was punishing him for filing grievances against them. Plaintiff specifically

mentioned Defendants Norwood, Gilkey and Dykehouse, but did not mention Defendant Huss. *See* 8/23/05 Grievance Request, Exhibit 6, docket #41. Under the MDOC Grievance Policy, a prisoner is required to provide the "names of all those involved in the issue being grieved." *See* Policy Directive 03.02.130, ¶ T. Because Plaintiff did not mention Huss in the second grievance request, the request also was insufficient to exhaust his claims against Defendant Huss.

Plaintiff failed to exhaust his administrative remedies against Defendant Huss; therefore, the Court should grant summary judgment in her favor. Because the remaining three Defendants withdrew from the motion for summary judgment, Plaintiff's retaliation and equal protection claims should proceed against them. *See Jones*, 127 S. Ct. at 924 (if a complaint contains both exhausted and unexhausted claims, the court should dismiss the unexhausted claims and proceed with the exhausted claims.)

II.     **Plaintiff's Cross-Motion for Summary Judgment**

In his cross-motion for summary judgment (docket #42), Plaintiff claims that he is entitled to a judgment in his favor because Defendants have failed to raise a genuine issue of material fact with regard to his surviving retaliation and equal protection claims. Plaintiff is under the mistaken impression that by moving for summary judgment only on the ground of exhaustion, Defendants have waived all other defenses or opportunity to dispute the facts as alleged by Plaintiff. Pursuant to the Court's order for service in this case (docket #9), Defendants were specifically directed to raise only the lack of exhaustion in their initial motion. The order further provided that a defendant asserting the exhaustion defense will have the opportunity to raise any other defense in a future motion or pleading. Accordingly, Plaintiff's cross-motion for summary judgment on the merits of his claims is premature.

**Recommended Disposition**

For the foregoing reasons, I recommend that Defendant Huss' motion for summary judgment (docket #25) be granted, and that Plaintiff's claims against Defendant Huss be dismissed without prejudice for failure to exhaust his administrative remedies. I further recommend that Plaintiff's cross-motion for summary judgment (docket #42) be dismissed. Plaintiff's retaliation and equal protection claims should proceed against Defendants Norwood, Gilkey and Dykhouse.


Dated:   August 9, 2007              /s/  Joseph G. Scoville
                                     United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).