UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DION PATRICK DAWSON, #317608,    )
                                 )
            Plaintiff,           )      Case No. 1:06-cv-914
                                 )
v.                               )      Honorable Paul L. Maloney
                                 )
NANNETTE NORWOOD, et al.,        )      **REPORT AND RECOMMENDATION**
                                 )
            Defendants.          )
_____  )

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff is serving a sentence of life without parole on his first-degree murder conviction, and he is currently an inmate at the Chippewa Correctional Facility (URF), located in Kinchloe, Michigan. (docket # 69). The four State employees plaintiff named as defendants in this lawsuit are members of the Ionia Maximum Correctional Facility's (ICF's) Security Classification Committee (SCC): Deputy Warden Nannette Norwood, Resident Unit Manager (RUM) Hearld Gilkey, Case Manager Steven Dykehouse, and Assistant Deputy Warden Erica Huss. Plaintiff alleges that defendants violated his constitutional rights when, during the SCC's periodic reviews of plaintiff's administrative segregation status in 2005, defendants failed to vote in favor of removing plaintiff from administrative segregation. Plaintiff alleges that defendants' actions constituted retaliation in violation of his First Amendment rights. He further alleges that the same actions, under a "class-of-one" theory, violated his rights under the Fourteenth Amendment's Equal Protection Clause.

Plaintiff sued defendants in their individual capacities. (Compl., ¶¶ 2-5, docket # 1). Plaintiff seeks an award of monetary damages and declaratory relief.

The matter is now before the court on a Rule 12(b)(6) motion by defendants Norwood, Gilkey, and Dykehouse.[1] (docket # 61). Defendants argue that plaintiff's complaint fails state a claim, and that they are entitled to dismissal of plaintiff's claims for monetary damages on Eleventh Amendment immunity and qualified immunity grounds. For the reasons set forth herein, I recommend that defendants' motion be granted in part and denied in part. The Supreme Court's June 2008 decision in *Engquist v. Oregon Dep't of Agriculture*, 128 S. Ct. 2146 (2008), totally undermines plaintiff's "class-of-one" theory. Accordingly, I recommend that defendants' motion to dismiss be granted on all plaintiff's Equal Protection Clause claims. I further recommend that plaintiff's claims for declaratory relief be dismissed as moot. I recommend that the remainder of defendants' motion be denied.

**Applicable Standards**

Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). The court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Zaluski v. United Am. Healthcare Corp.*,

---

[1]On November 11, 2007, the court granted a motion for summary judgment by defendant Erica Huss and dismissed all of plaintiff's claims against Huss because plaintiff had not properly exhausted his available administrative remedies. (docket # 67).

527 F.3d 564, 570 (6th Cir. 2008); *Ley v. Visteon Corp.*, No. 06-2237, 2008 WL 3905469, at * 2 (6th Cir. Aug. 26, 2008). The court need not accept as true legal conclusions or unwarranted factual inferences. *See Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

### Factual Allegations

On January 5, 2005, plaintiff was involved in a fight with other prisoners at the Gus Harrison Correctional Facility (ARF). Plaintiff was also a suspect in a stabbing at ARF that occurred minutes before the fight. Plaintiff was held in administrative segregation at the Ionia Maximum Correctional Facility (ICF) from January 6, 2005, through October 5, 2005. This lawsuit stems from the failure of ICF's Security Classification Committee (SCC) to vote in favor of discontinuing plaintiff's confinement in administrative segregation during its periodic reviews of plaintiff's management status.

Plaintiff alleges that on January 5, 2005, he was present in the activity room at ARF when another prisoner was stabbed. Immediately after the victim was removed from the room, plaintiff became involved in a fist fight with other ARF prisoners. After the fight, a corrections

officer entered the activity room and searched the prisoners. The officer found a laceration on plaintiff's hand. Plaintiff received a Notice of Intent (NOI) to classify him to segregation pending the outcome of the investigation by the Michigan State Police concerning the stabbing incident. On January 6, 2005, plaintiff was transferred from ARF (a level four facility) to ICF (a level five facility). Plaintiff states that Michigan State Police investigators concluded that he was not involved in this stabbing. As a result, the NOI was dismissed, but plaintiff received a major misconduct charge for fighting with prisoner Humphries. ARF prisoners Lancaster and White were charged with the major misconduct of committing assault and battery on prisoner Humphries.

On January 21, 2005, a hearing officer found plaintiff guilty of the major misconduct charge, and on January 25, 2005, the SCC reclassified plaintiff to administrative segregation. The SCC provided plaintiff with monthly reviews of his management status. Plaintiff alleges that on April 28, 2005, he filed a grievance against the SCC, complaining that the manner in which the SCC conducted its 30-day periodic reviews violated his due process rights because the SCC routinely continued his segregation without giving him a meaningful opportunity to be heard. On May 19, 2005, plaintiff filed a grievance against defendant Gilkey, alleging that Gilkey and another RUM worked together in order to circumvent the grievance process. Plaintiff alleges that during an interview regarding this grievance, Gilkey "hurl[ed] retaliatory threats" at plaintiff and threatened to move him to Housing Unit 2 if he did not sign off on the grievance. (Compl., ¶ 53). Plaintiff claims that "Unit 2 was rumored to be very foully operated." (*Id.*)

On June 6, 2005, plaintiff filed an informal complaint ("kite") against Deputy Warden Norwood "requesting that she interview him." (Compl., ¶ 24). According to plaintiff, Ms. Norwood was the head of the SCC and was the administrator responsible for overseeing the reclassification

of prisoners. On June 7, 2005, Deputy Warden Norwood responded to plaintiff's kite by stating that she was not required to interview plaintiff.

On July 13, 2005, defendants Norwood and Gilkey interviewed plaintiff regarding his classification. Plaintiff alleges that Ms. Norwood threatened to punish him by holding him in administrative segregation for three more months. On July 13, 2005, plaintiff filed a grievance against Norwood and the SCC.

Plaintiff alleges that on July 15, 2005, RUM Gilkey informed him that Ms. Norwood had called ARF, and confirmed that plaintiff was not involved in the stabbing, and indicated that plaintiff would be transferred into ICF's general population as soon as bed space was available. On July 21, 2005, plaintiff wrote a kite to Deputy Warden Norwood inquiring whether she had released plaintiff from administrative segregation. Plaintiff states that Norwood's July 25, 2005 response indicated that plaintiff had been released from administrative segregation. "On August 16, 2005, plaintiff informed Deputy [Warden] Norwood [that] he was aware of the bed space in the general population and wondered why he was still in ad-seg." (Compl., ¶ 59).

On August 25, 2005, defendants Huss, Gilkey, and Dykehouse interviewed plaintiff to determine whether plaintiff should remain in administrative segregation. On October 5, 2005, plaintiff was released from administrative segregation into ICF's general population. Plaintiff was transferred to a security level four prison in early 2006, and he filed this lawsuit on December 29, 2006.

Plaintiff alleges that he received more severe treatment than prisoners Lancaster, White, and Humphries who were found guilty of major misconduct charges arising from the same incident. Plaintiff states that Humphries served fifteen days in segregation and then was released

back to level four general population. Lancaster and White served twenty days in segregation before being returned to the general population in a security level four facility. Plaintiff further alleges that Prisoners White and Lancaster had other recent misconduct convictions. Plaintiff maintains that while he had no previous misconduct convictions for fighting, he spent approximately nine months in administrative segregation. Prisoners White, Lancaster, and Humphries were not housed at ICF, and the members of ICF's Security Classification Committee did not determine how long those prisoners remained in administrative segregation at their respective prisons.

## Discussion

### I. Eleventh Amendment Immunity

Defendants argue that plaintiff's claim for damages against them in their official capacities is barred by Eleventh Amendment immunity. (Deft. Brief at 13, docket # 62). Plaintiff sued the defendants in their individual capacities. (Compl., ¶¶ 2-5, docket # 1). The Eleventh Amendment does not bar claims against state officers sued in their personal capacities. *See Dean v. Byerly*, 354 F.3d 540, 554 n.8 (6th Cir. 2004). Defendants are not entitled to dismissal of claims that plaintiff never asserted.

### II. First Amendment Retaliation

The parties recognize that the elements of a First Amendment retaliation claim are (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. (Deft. Brief at 11; Plf. Brief at 13-14, docket # 65). *See Thaddeus-X*

*v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). A prisoner's filing of grievances can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Scott v. Stone*, 254 F. App'x 469, 472 (6th Cir. 2007). Defendants offer no argument that plaintiff's grievances forming the foundation of his retaliation claims against defendants were anything other than protected conduct. (Deft. Brief at 11). Defendants have not seriously engaged the second element of plaintiff's retaliation claims. Defendants simply state, "Regardless of whether [being held in administrative segregation longer than he should have been for fighting with another prisoner] would constitute an 'adverse action,' Plaintiff still cannot show that he was held in administrative segregation *because of* the grievances he filed." (Deft. Brief at 12).

The focal point of defendants' motion is therefore the causation element. They argue that the determination whether a maximum security prisoner should be released from administrative segregation is based on a number of factors, including an assessment of the prisoner's behavior and attitude, review of the circumstances that resulted in the prisoner's initial placement in administrative segregation, "evaluation of his potential to honor the trust implicit in less restrictive confinement[,] and assessment of his need for correctional mental health programming." (Deft. Brief at 12). Defendants argue that plaintiff "cannot establish the necessary causal connection to proceed on his retaliation claim[s]" because "Defendants had legitimate reasons other than Plaintiff's grievances to make the decisions they did." (*Id.* at 13). If the motion before the court were a motion for summary judgment supported by affidavits and other evidence, defendants' "lack of sufficient evidence of causation" argument would be far more substantial. Defendants elected to file a Rule 12(b)(6) motion. Plaintiff's complaint contains direct or inferential allegations respecting all the

material elements of First Amendment retaliation claims against defendants Norwood, Gilkey, and Dykehouse. Accepting all these allegations as factually true, I conclude that plaintiff has stated a viable claim for retaliation. I recommend that defendants' motion to dismiss these claims be denied.

### III.     Equal Protection

Defendants argue that plaintiff's complaint fails to allege a viable claim under the Fourteenth Amendment's Equal Protection Clause. (Deft. Brief at 3-11). Plaintiff's Equal Protection Clause claims are based on a "class -of-one" theory:

> At the very outset, Plaintiff makes it perfectly clear this is not the normal equal protection case. Plaintiff does not claim that he was discriminated against because of his belonging to a protected class such as race, gender or religion. Instead, Plaintiff bases his equal protection claim on a less-developed strand of equal protection jurisprudence: the "class-of-one" claim, first expressly recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)(per curiam). Hence, Defendants['] argument . . . that Plaintiff has failed to claim he is a member of a specific group . . . or allege racial or sexual or any other class-based discrimination must be deemed moot, as it is wholly irrelevant to the unorthodox manner ("class-of-one") in which [plaintiff's] equal protection claim is based.

(Plf. Brief at 2). The Supreme Court's recent decision in *Engquist v. Oregon Dep't of Agriculture*, 128 S. Ct. 2146 (2008) has totally undermined plaintiff's purported "class-of-one" theory.

In *Engquist*, the Supreme Court held that a "class-of-one" theory is available only in limited contexts.[2] The Court found that the "class-of-one" theory was not appropriate for areas in which a State depends on the discretionary determinations made by its employees:

---

[2]The Supreme Court first recognized the theory in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), where the village had required a 15-foot easement from property owners in order to connect their property to the municipal water supply, yet the village had singled out Mr. Olech and demanded that he grant the village a 33-foot easement. "This differential treatment [of like-situated property owners] raised a concern for arbitrary classification, and [the Court] therefore required the State to provide a rational basis for it." 128 S. Ct. at 2153-54.

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike under like circumstances and conditions" is not violated when one person is treated differently than others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a single person would undermine the very discretion that such state officials are entrusted to exercise.

128 S. Ct. at 2154. The example the Supreme Court used to illustrate this point was a traffic officer stationed along a busy highway where people often drive above the speed limit, with the officer giving a speeding ticket to one driver. "[A]llowing an equal protection claim on the ground that the ticket was given to one person and not others, even for no discernable or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what is in its nature a subjective, individualized decision that it was subjective and individualized." *Id.* at 2154.

The Supreme Court observed that the State, as employer, has a legitimate interest in promoting efficiency and proper discipline in the conduct of its business. There is a "'common sense realization that government offices could not function if every employment decision became a constitutional matter.'" 128 S. Ct. at 2152 (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)). Public employees have other constitutional and statutory protections, and the Court should not "impermissibly 'constitutionalize the employee grievance.'" *Id.* at 2157 (quoting *Connick*, 461 U.S. at 154). The Court recognized that massive potential for abuse of this theory, and the serious risk of federal micro-management of virtually every facet State's conduct of its business as a matter of constitutional law under the Equal Protection Clause:

> [W]e are guided, as in the past, by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick*, [461 U.S.] at 143. If, as Engquist suggests, plaintiffs need not claim discrimination on the

>basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action--not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments--on the theory that other employees were not treated wrongfully. On Engquist's view, every one of these employment decisions by a government employer would become the basis for an equal protection complaint.

*Id.* at 2156 (citation omitted). The Supreme Court held that the "'class-of-one' equal protection theory has no place in the public employment context." *Id.* at 2148-49.

The "class-of-one" theory is even less appropriate in the prison context. The State of Michigan has a compelling interest in the safe and efficient operation of its prisons. "The Supreme Court has held that in most circumstances, prison officials 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). States, not the federal courts, are responsible for the day-to-day operations of the State's prisons. *See Turner*, 482 U.S. at 89. The problems posed by the current proliferation of prisoner lawsuits are well-documented. *See, e.g.*, *Jones v. Bock*, 127 S. Ct. 910, 914 (2007); *Woodford v. Ngo*, 548 U.S. 81, 94 n. 4 (2006). The equal protection claims plaintiff is attempting to assert against defendants serve as perfect examples of the potential for abuse of the "class-of-one" theory in the prison context. Every prisoner held in State custody is housed by the State at a specific security level and at a specific management level. Thus, every prisoner could be a "class-of-one" based on these individualized assessments made by State employees.

Plaintiff objects to the decisions made by members of the SCC against changing his management status during periodic reviews. Plaintiff was held in administrative segregation for approximately nine months. Administrative segregation of this limited duration is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791(6th Cir. 1995). The Sixth Circuit has held that a prisoner's placement in administrative segregation for over a year is not an atypical or significant hardship as to create a liberty interest in due process. *See Mackey v. Dyke*, 111 F.3d 460, 461-63 (6th Cir. 1997); *accord Harden-Bey v. Rutter*, 524 F.3d 789, 791-96 (6th Cir. 2008). It is equally well established that plaintiff did not have any protected liberty interest in his security classification or the place of his confinement. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Plaintiff has other constitutional protections, such as the Eighth Amendment's prohibition against cruel and unusual punishments. Plaintiff has alleged a viable First Amendment retaliation claim against defendants. Permitting a "class-of-one" Equal Protection Clause theory in the prison context would provide prisoners with very little in the way of additional substantive protections. It would, however, unnecessarily involve the federal courts in micro-management of the State's prisons. The management and security level status of every prisoner, on every day of the prisoner's confinement, would become constitutional issues. I find that the "class-of-one" equal protection theory has no place in the prison context, where a prisoner challenges discretionary decisions regarding security classification and prisoner placement. I recommend that the defendants' Rule 12(b)(6) motion be granted on plaintiff's equal protection claims.

### IV. Qualified Immunity

A lengthy discussion of qualified immunity is unnecessary. Defendants' qualified immunity argument is based exclusively on the first prong of the qualified immunity analysis. (Deft. Brief at 14). The first prong of the analysis is whether the plaintiff has alleged facts showing that the defendants' conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Thus, the qualified immunity analysis is identical to the analysis of the plaintiff's individual claims under Rule 12(b)(6): plaintiff has stated a viable retaliation claim, but not an equal protection claim.

### V. Mootness

Plaintiff's claims for declaratory relief are moot as a result of his transfer from ICF. (Compl., ¶ 77). *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003).

### **Recommended Disposition**

For the foregoing reasons, I recommend that defendants' Rule 12(b)(6) motion (docket # 61) be granted in part and denied in part. I recommend that defendants' motion be granted on all plaintiff's purported Equal Protection Clause claims. I further recommend that plaintiff's claims for declaratory relief be dismissed as moot. I recommend that the remainder of defendants' motion be denied. If this report and recommendation is adopted in its entirety, the plaintiff's remaining claims will be his claims for monetary damages against defendants Norwood, Gilkey, and

Dykehouse in their individual capacities, based on plaintiff's allegations of retaliation in violation of his First Amendment rights.


Dated:   September 16, 2008             /s/  Joseph G. Scoville
                                        United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).